JESSICA K. PRIDE (SBN 249212)
jpride@pridelawfirm.com
DANTE PRIDE (SBN 262362)
dpride@pridelawfirm.com
THE PRIDE LAW FIRM
2831 Camino Del Rio S., Suite 104
San Diego, CA 92108
Telephone: (619) 516-8166
Facsimile: (619) 785-3414
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| C.C.,<br><br>        Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA (FEDERAL BUREAU OF PRISONS); SERGIO SAUCEDO; and DOES 1-25, inclusive,<br><br>        Defendants. | CASE NO.<br><br>**COMPLAINT**<br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1.      Beginning in approximately 2021, Defendant SERGIO SAUCEDO ("SAUCEDO"), a correctional officer at Federal Correctional Institution – Dublin ("FCI Dublin") owned and operated by Defendant the United States of America (Federal Bureau of Prisons) ("United States"), sexually assaulted Plaintiff C.C., a minimum-security inmate, in violation of federal and state law.

2.      Congress enacted the Prison Rape Elimination Act in 2003, 34 U.S.C. § 30301, *et seq.* ("PREA") to establish national standards for preventing precisely this kind of sexual abuse from happening to federal inmates. Under PREA, the U.S. Department of Justice promulgated detailed regulations that provide precise

procedures that prisons must follow. The Federal Bureau of Prisons ("BOP") adopted PREA policies in response to these regulations.

3.     Defendant SAUCEDO, correctional officer at FCI Dublin, repeatedly subjected Plaintiff to sexual abuse. In doing so, Defendant violated Plaintiff's Constitutional rights and California law on gender violence, sexual assault, and common law on battery.

4.     As a result of Defendants' actions, Plaintiff suffered numerous emotional injuries and incurred severe personal injuries, which continue to affect her today.

5.     Plaintiff brings this civil action and asserts claims: (1) against SAUCEDO and DOES 1-25, inclusive, under the Eighth Amendment's Cruel and Unusual Punishment Clause (Excessive Force), and California's gender violence and sexual assault statutes (Civil Code §§ 52.4 and 1708.5); (2) against the United States under the Fifth Amendment's Due Process Clause (Procedural Due Process); and (3) against the United States under the Federal Tort Claims Act (28 U.S.C. §§ 1346(b), 1671-2680) ("FTCA") for various tort claims against all Defendants arising under California common law committed within the course and scope of their federal office or employment.

6.     For these violations, Plaintiff seeks nominal, compensatory, and punitive damages, attorneys' fees and costs, and any other relief that the Court deems appropriate.

## JURISDICTION AND VENUE

7.     Plaintiff's claims arise under the United States Constitution, California statutory law, California common law, and the FTCA. The Court has diversity jurisdiction over Plaintiff's entire action under 28 U.S.C. § 1332 because Plaintiff and Defendants are diverse in citizenship and more than $75,000 is in controversy. The Court also has federal question jurisdiction over Plaintiff's Constitutional claims and FTCA claims (which have been administratively exhausted) under 28

U.S.C. § 1331. And the Court has supplemental jurisdiction over Plaintiff's California statutory and common-law claims under 28 U.S.C. § 1367 because these state-law claims arise from a common nucleus of operative fact with Plaintiff's federal question claims.

8.     The Court also has personal jurisdiction over Defendants. The Court has general jurisdiction over Defendants because, on information and belief, each Defendant is a citizen of, and domiciled in, California. The Court has specific jurisdiction over Defendants because they committed the actions and omissions forming the basis for each claim against them in California.

9.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 1402(b). As noted above, Defendants' actions and omissions that give rise to Plaintiff's claims all occurred in this District, at FCI Dublin, located at 5701 8th St., Dublin, California 94568.

## INTRADISTRICT ASSIGNMENT

10.     Pursuant to Civil Local Rule 3-29(d), Plaintiff's action is properly assigned to the San Francisco Division of this District because the action arises from actions and omissions taken in Alameda County, California, where FCI Dublin is located.

## PARTIES

11.     Plaintiff is an individual and citizen of Dublin, California. During the relevant period, Plaintiff was incarcerated at FCI Dublin in Dublin, California. Plaintiff is still in FCI Dublin custody.

12.     Upon information and belief, Defendant SAUCEDO is an individual and citizen of California, where he is domiciled. During the relevant period, SAUCEDO worked as correctional officer at FCI Dublin in the Bureau of Prison's (BOP's) employment. While performing the acts and omissions that Plaintiff alleges in this complaint, SAUCEDO was acting within the scope of his official employment, or with the BOP's permission and consent.

13.     Defendant United States is a governmental entity. During the relevant period, the United States, through the BOP, a federal agency, was in possession and control of FCI Dublin, a minimum-security federal prison located in Dublin, California. The United States has waived sovereign immunity as to Plaintiff's tort claims against Defendants, pursuant to FTCA, 28 U.S.C. § 2674.

14.     Plaintiff is ignorant as to the true names, identities, and capacities of Defendants DOES 1 through 25, inclusive. Therefore, Plaintiff sues these Defendants under the fictitious designation of DOES 1 through 25. Plaintiff will amend this Complaint once their identities have been ascertained as well as facts giving rise to their liability.

15.     Defendants Does 1-25, individually and in their official capacities, at all times relevant herein, were correctional officers and/or employees for the BOP, acting in their official capacity. These defendants include correctional officers in supervisory positions that participated in training SAUCEDO and other employees, in the supervision of SAUCEDO and other employees, and in reporting incidents of sexual abuse to the BOP.

## STATEMENT OF FACTS

**A.     PREA regulations provide mandatory procedures for preventing, reporting, investigating, and responding to reports of staff sexual abuse of an inmate.**

16.     PREA regulations require the BOP to have a strict "written policy mandating zero tolerance toward all forms of sexual abuse and sexual harassment and outlining the [BOP's] approach to preventing, detecting, and responding to such conduct," which the BOP has adopted.[1]

17.     PREA regulations also comprehensively mandate that the BOP and its correctional staff follow certain policies and procedures when an inmate has allegedly suffered sexual abuse.

---

[1] *See* BOP Program Statement No. 5324.11, at 15 (Jan. 6, 2014); 28 C.F.R. § 115.11(b), (c).

18.     First and foremost, the BOP "shall require all staff to report immediately" "any knowledge, suspicion, or information regarding an incident of sexual abuse" and "staff neglect or violation of responsibilities that may have contributed to an incident or retaliation."[2] "Apart from reporting to designated supervisors or officials, staff shall not reveal any information related to a sexual abuse report to anyone other than to the extent necessary, as specified in agency policy, to make treatment, investigation, and other security and management decisions."[3]

19.     Regardless of whether a report of sexual abuse is made, if an inmate is "subject to a substantial risk of imminent sexual abuse, [BOP employees] shall take immediate action to protect the inmate."[4]

20.     Upon receiving a report of inmate sexual abuse, the facility is required to report it to a designated internal investigator[5] and conduct an administrative or criminal investigation.[6] A criminal investigation is required for all allegations of inmate sexual abuse, "unless the allegation does not involve potentially criminal behavior."[7] All such referrals must be documented.[8]

21.     Given the high risk for retaliation against a reporter or victim, the BOP is required to "protect all inmates and staff who report sexual abuse or sexual harassment or cooperate with sexual abuse or sexual harassment investigations from retaliation by other inmates or staff and shall designate which staff members or departments are charged with monitoring retaliation."[9] A prison's PREA compliance manager must monitor an inmate sexual abuse victim for 90 days after a report of abuse is filed to ensure that he or she is not retaliated against by prison

---

[2] 28 C.F.R. § 115.61(a).
[3] *Id.* § 115.61(b)
[4] *Id.* § 115.62
[5] *Id.* § 115.61(e)
[6] *Id.* § 115.22(a); *see also Id.* § 115.71
[7] *Id.* § 115.22(b)
[8] *Id.*
[9] *Id.* § 115.67(a).

1  staff.[10]

2      22.    The BOP must also provide ongoing access to mental healthcare to

3  all inmates who have been victimized by sexual abuse while detained in the

4  facility.[11]

5      23.    The BOP is required to train every employee who may have contact

6  with inmates to comply with the above PREA regulations and must "document,

7  through employee signature or electronic verification, that employees

8  understand the training they have received."[12] In addition to this general

9  training, specialized training is required for sexual abuse investigators.[13]

10     24.    Where an investigation finds that a staff member has engaged in

11  sexual abuse, the presumptive disciplinary sanction is termination, and some

12  form of discipline is required.[14]

13     25.    Finally, all documentation relating to an allegation of inmate sexual

14  abuse must be maintained[15] and securely retained for at least ten years after the

15  date of initial collection.[16]

16     26.    Defendants repeatedly violated these PREA regulations.

17  **B. Defendant SAUCEDO routinely subjected Plaintiff to sexual**

18     **abuse.**

19     27.    On approximately May 14, 2021, Plaintiff's first night as an inmate,

20  SAUCEDO commenced his sexual harassment and abuse of Plaintiff. As soon

21  as she entered her cell area, SAUCEDO addressed Plaintiff and the other new

22  female inmates by saying, "Welcome to Hell ladies. I am here to make your life

23  a living Hell, and to treat you like the pieces of shit you are." Plaintiff was

24  placed in a prison cell alone, leaving her a prime target for SAUCEDO's abuse.

25  _____

26  [10] 28 C.F.R. § 115.67(c); BOP Program Statement No. 5324.11, at 44 (Jan. 6, 2014)
   [11] *Id.* § 115.83(a), (b), (h).

27  [12] *Id.* § 115.31.
   [13] *Id.* § 115.34.
   [14] *Id.* § 115.76.

28  [15] *Id.* § 115.87(a), (d).
   [16] *Id.* § 115.89(a), (d).

28.     Through his authoritative position over Plaintiff, and in violation of her civil and constitutional rights, SAUCEDO began sexually harassing Plaintiff. Over the next four to five days, SAUCEDO relentlessly harassed Plaintiff while she was trapped in her cell. SAUCEDO made sexual comments about Plaintiff's body and forced her to undress in front of him multiple times.

29.     While Plaintiff was naked, SAUCEDO made vulgar comments like, "Why do you shave your pussy like that? Who are you going to show here?"

30.     SAUCEDO would stare at Plaintiff and say, "You're skinny for an old lady." When Plaintiff tried to resist, SAUCEDO would tell her that he had a key and could come into her cell at any time.

31.     Plaintiff was terrified to report SAUCEDO because he threatened, "No one will believe you because you are a felon and I am a federal agent."

32.     Plaintiff was then placed in a quarantine for approximately twenty-eight days due to the COVID-19 pandemic. During her quarantine period, the abuse by SAUCEDO continued. Whenever Plaintiff had to shower during SAUCEDO's shift, he would watch. On multiple occasions, SAUCEDO ripped open Plaintiff's shower curtain to view her naked. Plaintiff was terrified for her safety. Saucedo told Plaintiff that he would show her what a "real man" is like.

33.     Each time SAUCEDO exposed Plaintiff, it was unwelcomed, offensive, and nonconsensual.

34.     SAUCEDO's conduct is an example of some of the cruel and unusual punishment that Plaintiff endured at FCI Dublin.

35.     Plaintiff made complaints about the abuse and wrote letters to the BOP, Deputy Attorney General Lisa Monaco, senators, other congressmen and women, pleading for help. She has suffered retaliation as a result. For example, Plaintiff's legal mail has been searched and was fed contaminated food.

### C. FCI Dublin is known for its culture of tolerating sexual misconduct.

36. Based on information and belief, Plaintiff alleges that SAUCEDO had a known pattern and behavior of sexually abusing female inmates. For example, inmate Y.S. saw SAUCEDO watching her in the shower between May through October 2021. SAUCEDO ripped open the shower curtain while inmate L.C. was showering, causing her to fall over so he could see her naked body. SAUCEDO also sexually harassed L.C. by making sexual noises at her and squirting shampoo on her clothing, mimicking ejaculation. Additionally, inmate L.A. was sexually harassed by SAUCEDO when he forced her to bend over in front of him.

37. Based on information and belief, Plaintiff alleges that throughout the last three decades, the United States has repeatedly ignored incidents of sexual misconduct at FCI Dublin. Currently, five employees have been indicted by the Department of Justice for sexual misconduct, three have pled guilty, and nine other employees are on administrative leave pending investigation – the most in U.S. history of the Bureau of Prisons. The following examples are just a fraction of the magnitude of sexual misconduct and violence that transpired at FCI Dublin:

- In 1996, BOP officers took three female inmates from FCI Dublin to a male unit, opened their cell doors, and allowed male inmates to rape them.
- In the late 1990's and early 2000's, four male BOP employees were either convicted or pled guilty to sexually abusing female inmates at FCI Dublin.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- According to the U.S. Senate Report,[17] in the early 2010s, approximately a dozen Dublin employees were removed for their sexual abuse of inmates, "including one who videotaped himself having sex with inmates and stored those tapes in a prison locker. None were arrested."

- In 2019, an FCI inmate, Victoria Peterson, filed a suit against Officer William Martinez for abusing his power and using excessive force to have sex with her. She also sued the warden at the time, Wiley Jenkins, for failing to take disciplinary action against Martinez and allowing him to continue working at FCI Dublin.

- In 2019, inmate L.I. filed a claim against former FCI Dublin chaplain James Highhouse for sexual assault. Highhouse started having unwanted physical contact with L.I. in May of 2018, and although he was ultimately charged with abuse of L.I., prosecutors said he engaged in predatory conduct with at least six women from 2014 to 2019. Highhouse pleaded guilty and was sentenced to seven years in prison.

- Between approximately June of 2020 and September of 2020, inmate A.R. witnessed Klinger's sexual relationship with another inmate. She witnessed Klinger take women into a hidden areas to have sex with him. Klinger and CO Jaime Perez spoke with sexually explicit language toward A.R. CO Perez would bump up against her and grab her breasts. Officer Perez also took photos of A.R.

---

[17] JON OSSOFF & RON JOHNSON, S. REP., SEXUAL ABUSE OF FEMALE INMATES IN FEDERAL PRISONS (2022) (released in conjunction with the permanent subcomm. on investigations December 13, 2022 hearing).

1
2
3
4
5
6

- Between approximately August 2020 and November 2020, inmate D.V. was pressured into an ongoing sexual relationship with FCI Dublin Correctional Officer Enrique Chavez. CO Chavez kissed her, touched her bare breasts and vagina, and had D.V. touch his penis. CO Chavez was known to bring inmates into the kitchen closet for "meetings."

7
8
9
10
11
12

- In 2021, CO Chavez sexually harassed another inmate, J.C., while was working in the kitchen. CO Chavez would brush his erect penis up against J.C. and said "look, it's hard for you." CO Chavez was charged with abusive sexual contact of a prisoner in violation of 18 U.S.C. § 2244(a)(4). He pled guilty to the conduct and was sentenced to 20 months in prison.

13
14
15
16

- CO Smith (full name unknown) watched another inmate in the shower. She was also sexually assaulted by CO Venegas (full name unknown) when he rubbed his penis up against her back and buttocks.

17
18
19
20
21
22
23

- Another inmate, A.J., suffered sexual abuse at FCI Dublin between approximately September 2021 and May of 2022. When A.J. arrived, Paramedic Fraser Cohen grabbed her breasts with no chaperone. Later throughout her incarceration, CO Nicholas Ramos consistently watched her in the shower, and both CO Ramos and CO Phillips made her strip, cough, and squat for cavity searches.

24
25
26

- From April through October 2020, Klinger manipulated inmate M.R. into performing oral sex and engaging in forced sexual intercourse.

27
28

- Inmate D.S. was forced to engage in oral sex with nurse Jeff Wilson.

- Jeff Wilson forced inmate L.A. to show him her breasts.
- Another inmate went to TDY (temporary duty) medical employee Jay Alexander (exact name unknown) for medical treatment on her back, and he pulled her underwear down and touched her buttocks and in between her inner thighs.
- Inmate G.M. was preyed upon by Disciplinary Hearing Officer (DHO) David Perez for over three years. David Perez would "make out" with G.M., touch her breasts, caress her, and make her believe he was her boyfriend. When G.M. was on probation, David Perez met up with her and had her touch his genitals.
- Another kitchen foreman, O'Connor (full name unknown) touched inmate N.P.'s buttocks and brushed his hand over her chest.
- CO Jones would tell inmate J.C. to "suck his dick" and he would tell her to "Get on your knees." CO Jones would grab his genitalia and tell her to "look."

38.    Upon information and belief, at least 22 FCI Dublin employees, including those who courageously reported and/or acted to prevent instances of sexual violence, have been reassigned to other prisons. This reassignment got the attention of Congresswoman Jackie Speier, who wrote a letter to the new Director of the Federal Bureau of Prisons, Colette Peters, requesting information about FCI Dublin's "culture of rampant sexual misconduct and subsequent cover-ups."[18]

39.    In December 2022, the United States Senate reported on the Permanent Subcommittee on Investigations findings from its investigation into sexual abuse of female prisoners in custody of the BOP. The report found that in at least four BOP facilities (FCI Dublin being one of them), multiple women

---

[18] Fox2KTVU Reporter Lisa Fernandez: https://www.ktvu.com/news/dublin-prison-guard-says-she-was-forced-out-for-reporting-abuse

endured ongoing sexual abuse for months or years. The report's conclusion stated, "BOP failed to detect or prevent sexual abuse of incarcerated women by male BOP employees. The agency's poor implementation of the audit program and reporting mechanisms required by PREA allowed serious, repeated sexual abuse in at least four facilities to go undetected. BOP's internal affairs practices have failed to hold employees accountable, and multiple admitted sexual abusers were not criminally prosecuted as a result. Further, for a decade, BOP failed to respond to this abuse or implement agency-wide reforms. Moving forward, BOP should consider the Subcommittee's findings as it works to implement changes to how it handles sexual abuse of female prisoners by male BOP employees."[19]

40.     Former Assistant Warden, Ray J. Garcia was found guilty of three counts of having sexual contact with an incarcerated person, four counts of abusive sexual contact and one count of lying to the FBI. GARCIA was sentenced to 5 years and 10 months in prison. Former CO Ross Klinger pled guilty to federal criminal charges for Sexual Abuse of a Ward (18 U.S.C. § 2243(b)) stemming out of his conduct against two other inmates and he is awaiting sentencing. CO John Bellhouse currently faces a six-count Grand Jury indictment for sexually abusing female inmates. His jury trial is set for June 5, 2023. Additionally, in March of 2022, SAUCEDO and CO Nicholas Ramos were placed on leave as a result of sexual misconduct allegations. CO Ramos committed suicide on August 21, 2022.

41.     Defendant United States failed to provide the sexual abuse victims with counseling services or victim advocates. The victims were retaliated against with interviews and examinations after filing their Federal Tort Claims. As a result of reporting the misconduct, the victims were put in the Solitary Housing Unit (SHU), received daily room tosses, and were placed on lock

---

[19] JON OSSOF & RON JOHNSON, S.REP., SEXUAL ABUSE OF FEMALE INMATES IN FEDERAL PRISONS (2022) (released in conjunction with the Permanent Subcomm. on Investigations December 13, 2022 hearing).

downs. The victims also had their phone calls and visitations taken away, their legal mail was read, and their legal phone calls were monitored.

## CLAIMS FOR RELIEF

### CLAIM ONE

### EIGHTH AMENDMENT, CRUEL AND UNUSUAL PUNISHMENT – SEXUAL ABUSE

**(Against SAUCEDO and DOES 1-25, inclusive, in their individual capacities)**

42.    Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

43.    Plaintiff brings this claim under the Cruel and Unusual Punishment Clause of the Eighth Amendment to the U.S. Constitution against SAUCEDO and DOES 1-25, inclusive, in their individual capacities.

44.    At all material times, SAUCEDO and DOES 1-25, inclusive, were federal employees of the BOP at FCI Dublin, acting under the color of federal authority with respect to the allegations in this complaint.

45.    SAUCEDO violated Plaintiff's right to be free from cruel and unusual punishment by repeatedly sexually abusing her while she was incarcerated as a minimum-security inmate at FCI Dublin.

46.    SAUCEDO's sexual abuse of Plaintiff occurred under coercive circumstances.

47.    By intentionally subjecting Plaintiff to sexual acts, SAUCEDO acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification.

48.    The inhumane conditions of confinement caused by SAUCEDO's repeated sexual abuse caused Plaintiff severe physical, mental, and emotional harm.

49.    SAUCEDO and DOES 1-25, inclusive, acted with malice and

THE PRIDE
LAW FIRM

oppression, and his conduct constitutes a reckless or callous disregard of Plaintiff's rights, entitling Plaintiff to punitive damages.

50.     Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

## CLAIM TWO

### GENDER VIOLENCE (Cal. Civ. Code § 52.4)

### (Against SAUCEDO in his individual capacity)

51.     Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

52.     Plaintiff brings this claim for gender violence under California Civil Code § 52.4 against SAUCEDO in his individual capacity.

53.     Under California statute, any person subjected to gender violence may bring a civil action for damages against the responsible party. Gender violence is a form of sex discrimination that includes a physical intrusion or invasion of a sexual nature under coercive conditions.

54.     SAUCEDO discriminated against Plaintiff based on her female gender when he repeatedly sexually abused her, by physically subjecting her to sexual acts, under the coercive conditions that were present between them.

55.     SAUCEDO's actions occurred outside the course and scope of his employment. Their actions and judgments in sexually abusing Plaintiff were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse, that they could not have been making a policy judgment in his decision to sexually abuse Plaintiff.

56.     By repeatedly subjecting Plaintiff to sexual acts, SAUCEDO caused her to suffer physical, mental, and emotional injuries, as well as injuries

to her personal dignity.

57.     SAUCEDO acted with malice and oppression and his conduct constitutes a reckless or callous disregard of Plaintiff's rights, entitling her to punitive damages.

58.     Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

59.     Plaintiff also seeks attorneys' fees and costs, as expressly authorized by statute.

## CLAIM THREE

### SEXUAL ASSAULT (Cal. Civ. Code § 1708.5)

### (Against SAUCEDO in his individual capacity)

60.     Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

61.     Plaintiff brings this claim for sexual assault under California Civil Code § 1708.5 against SAUCEDO in his individual capacity.

62.     SAUCEDO violated Plaintiff's statutory right to be free from sexual assault by repeatedly sexually abusing her while she was incarcerated as a minimum-security inmate at FCI Dublin.

63.     SAUCEDO's sexual abuse of Plaintiff occurred under coercive circumstances.

64.     For these reasons, SAUCEDO's sexual abuse of Plaintiff, an inmate in the custody of his employer, was deeply offensive to her personal dignity, would offend a person of ordinary sensitivity, and was unwarranted by the social usages in prison when the contact was made.

65.     Given the deeply offensive nature of these sexual acts and lack of

any possible penological justification for these sexual acts, SAUCEDO must have subjected Plaintiff to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff's person.

66.     By intentionally subjecting Plaintiff to sexual acts, SAUCEDO acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification.

67.     SAUCEDO's actions occurred outside the course and scope of his employment. His actions and judgment in sexually abusing Plaintiff were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse, that they could not have been making a policy judgment in their decision to sexually abuse Plaintiff.

68.     By repeatedly subjecting Plaintiff to sexual acts, SAUCEDO caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

69.     SAUCEDO acted with malice and oppression, and his conduct constitutes a reckless or callous disregard of Plaintiff's rights, entitling her to punitive damages.

70.     Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

## CLAIM FOUR

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (California common law)

### (Against SAUCEDO in his individual capacity)

71.     Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

72.     Plaintiff brings this claim for intentional infliction of emotional distress under California common law against SAUCEDO in his individual capacity.

73.     SAUCEDO engaged in outrageous conduct by repeatedly subjecting Plaintiff to sexual acts while she was incarcerated as an inmate in his employer's custody. SAUCEDO abused his authority over Plaintiff and his power to affect her interests in a manner that was beyond all bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized society.

74.     SAUCEDO's sexual abuse caused Plaintiff to suffer, and continue to suffer, severe emotional distress, including fear, depression, and anxiety. This distress was so substantial and enduring that no reasonable person in a civilized society should be expected to endure it.

75.     SAUCEDO intended to cause Plaintiff this emotional distress because he knew that emotional distress was certain to result from his sexual abuse of an inmate.

76.     SAUCEDO's actions occurred outside the course and scope of his employment. His actions and judgments in sexually abusing Plaintiff were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse, that he could not have been making a policy judgment in their decision to sexually abuse Plaintiff.

77.     SAUCEDO acted with malice and oppression, entitling Plaintiff to punitive damages.

78.     Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

## CLAIM FIVE

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### (California common law)

### (Against SAUCEDO in his individual capacity)

79.     Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

80.     Plaintiff brings this claim for negligent infliction of emotional distress under California common law against SAUCEDO in his individual capacity.

81.     SAUCEDO had a special and heightened duty of care to Plaintiff as her jailer that required him to protect her against reasonably foreseeable emotional harm, including from sexual abuse. PREA regulations and BOP policy prohibiting sexual abuse confirm this special and heightened duty.

82.     Alternatively, SAUCEDO had a general duty of care with respect to Plaintiff.

83.     SAUCEDO engaged in negligent conduct and in a willful violation of statutory standards. On multiple occasions, SAUCEDO breached his duty of care and the PREA regulations by purposefully and willingly subjecting Plaintiff to sexual acts. SAUCEDO's breach of his duty of care and willful violations of statutory standards were directed at Plaintiff.

84.     By repeatedly subjecting Plaintiff to sexual acts, SAUCEDO proximately caused her to suffer, and to continue to suffer, serious and severe emotional distress.

85.     Plaintiff's emotional reactions are not an abnormal response to her sexual abuse. A reasonable person would be unable to cope with the mental distress caused by being sexually abused by a BOP employee who had a duty to protect her from such abuse. No reasonable person in a civilized society should be expected to endure that kind of mental distress.

86.     SAUCEDO's actions occurred outside the course and scope of his employment. His actions and judgments in sexually abusing Plaintiff were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse, that he could not have been making a policy judgment in his decision to sexually touch Plaintiff.

87.     SAUCEDO acted with malice and oppression, and his conduct constitutes a reckless or callous disregard of Plaintiff rights, entitling her to punitive damages.

88.     Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

## FEDERAL TORT CLAIMS ACT ADMINISTRATIVE EXHAUSTION

89.     Claims Six and Seven, below, are asserted against the United States.

90.     Plaintiff has exhausted these claims against the United States under the FTCA.

91.     Plaintiff submitted a "Claim for Damage Injury, or Death" to the BOP for "permanent injuries, mental anguish, embarrassment, humiliation, pain, distress, and damages" as a PREA victim involving staff at FCI Dublin in the sum of $5,000,000.00.

92.     A true and correct copy of Plaintiff's FTCA claim is attached hereto as **Exhibit A**.

93.     The BOP received her administrative claim on October 26, 2022.

94.     A true and correct copy of the BOP's acknowledgment is attached hereto as **Exhibit B**.

95.     By April 26, 2023, six months after the BOP received Plaintiff's

administrative claim, the BOP has neither accepted nor rejected the claims. Pursuant to 28 U.S.C. § 2675(a), Plaintiff elects to consider this failure to act as a final denial of her claim.

## CLAIM SIX

### NEGLIGENCE (FTCA, California common law)

### (Against the United States)

96.     Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

97.     Plaintiff brings this claim against the United States under the FTCA based on the actions and/or omissions of SAUCEDO taken while working at FCI Dublin in his capacity as an employee of the BOP and acting within the scope of his employment, with the permission and consent of the United States.

98.     At all material times, Plaintiff was an inmate in the custody of the BOP, a federal agency of the United States in possession and control of FCI Dublin.

99.     **Duty**. SAUCEDO had a custodial duty, as well as a mandatory statutory obligation under PREA regulations and BOP policy, to protect inmates incarcerated by the United States from foreseeable harm, including, but not limited to, harm from sexual abuse.

100.   The BOP's Personal Conduct rules for staff disallow any sexual activity with an inmate, and state that an employee may not allow another person to engage in such behavior. It explicitly states that there is no such thing as consensual sex between staff and inmates.

101.   Alternatively, SAUCEDO had a general duty of care to Plaintiff.

102.   SAUCEDO's sexual abuse of Plaintiff was reasonably foreseeable to the United States because SAUCEDO's conduct made it obvious he was sexually abusing Plaintiff.

103.   **Breach of duty—inadequate supervision**. The United States

1  failed to supervise and operate FCI Dublin in a manner that would have

2  prevented SAUCEDO's ongoing sexual abuse of Plaintiff.

3       104.   SAUCEDO did not take reasonable, available measures to abate the

4  risk of sexual abuse to Plaintiff, and to guarantee her safety, even though a

5  reasonable administrator would have complied with PREA regulations regarding

6  proper prison operations, including adequately monitoring work programming

7  and correctional officer assignments.

8       105.   SAUCEDO's sexual abuse of Plaintiff occurred as the direct and

9  proximate result of the supervisory negligence of the United States.

10      106.   **Injuries and relief sought**. Plaintiff suffered a physical violation, a

11  violation of her liberty interest in being free from sexual abuse, injury from

12  being denied freedom of movement and programming, and severe mental and

13  emotional anxiety and distress, and will continue to suffer severe mental and

14  emotional anxiety and distress in the future.

15      107.   Plaintiff seeks the following relief for her injuries: non-economic

16  damages consisting of past physical injury, past and future mental pain and

17  suffering, mental anguish, emotional distress, and for offenses to her personal

18  dignity.

19                              <u>**CLAIM SEVEN**</u>

20              **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

21                          **(FTCA, California law)**

22                          **(Against the United States)**

23      108.   Plaintiff repeats and incorporates by reference every allegation

24  contained in the preceding paragraphs as if fully set forth herein.

25      109.   Plaintiff brings this claim against the United States under the FTCA

26  based on the actions and/or omissions of SAUCEDO which were taken while

27  working at FCI Dublin in his capacity as an employee of the BOP and acting

28  within the scope of his employment, with United States' permission and

THE PRIDE
LAW FIRM                  PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

1    consent.

2        110.   At all material times, Plaintiff was an inmate in the custody of the

3    BOP, a federal agency of the United States in possession and control of FCI

4    Dublin.

5        111.   **Duty**. SAUCEDO had a custodial duty, as well as a mandatory

6    statutory obligation under PREA regulations and BOP policy, to protect inmates

7    incarcerated by the United States from foreseeable harm, including, but not

8    limited to, harm from sexual abuse.

9        112.   **Breach of duty—inadequate supervision**. The United States

10   failed to supervise and operate FCI Dublin in a manner that would have

11   prevented SAUCEDO's ongoing sexual abuse of Plaintiff.

12       113.   The United States did not take reasonable, available measures to

13   abate the risk of sexual abuse to Plaintiff, and to guarantee her safety, even

14   though a reasonable administrator would have complied with PREA regulations

15   regarding proper prison operations, including adequately monitoring work

16   programming and correctional officer assignments.

17       114.   SAUCEDO's sexual abuse of Plaintiff occurred as the direct and

18   proximate result of the supervisory negligence of the United States.

19       115.   **Injuries and relief sought**. SAUCEDO's actions and omissions

20   caused Plaintiff to suffer, and continue to suffer, serious and severe emotional

21   distress, including fear, depression, and anxiety, because of being repeatedly

22   sexually abused.

23       116.   Plaintiff's emotional reaction was not an abnormal response to her

24   sexual abuse. A reasonable person would be unable to cope with the emotional

25   distress caused by being sexually abused by a correctional officer, who had a

26   duty to protect her from such abuse. Plaintiff's distress was of such a substantial

27   and enduring quality that no reasonable person in a civilized society should be

28   expected to endure it.

THE PRIDE
LAW FIRM

117.   By reason of the United States' negligent infliction of emotional distress Plaintiff has suffered severe emotional distress, and will continue to suffer severe mental and emotional anxiety and distress.

118.   Plaintiff seeks nominal and compensatory damages for these violations.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all claims so triable.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that this Court grant the following relief:

1.   Nominal damages in an amount to be determined at trial;

2.   Compensatory damages for injuries caused by a violation of her constitutional rights and personal dignity, physical injury, pain, discomfort, fears, anxiety, and other mental and emotional distress suffered by Plaintiff and for similar suffering reasonably certain to be experienced in the future, in an amount to be determined at trial;

3.   Punitive damages for malice, oppression, and reckless and callous disregard of Plaintiff's rights;

4.   An award to Plaintiff of reasonable costs; and

5.   An award to Plaintiff of reasonable attorneys' fees pursuant to 28 U.S.C. § 2678 and Cal. Civ. Code § 52.4; and

6.   Such other and further relief as the Court may deem fit and proper.

Respectfully Submitted,

Dated: May 5, 2023                    **THE PRIDE LAW FIRM**

/s/ Jessica K. Pride
Jessica K. Pride
Email: jpride@pridelawfirm.com
Attorneys for Plaintiff